## Bensley vs. Homier, imp.

Usury: *Rights of junior judgment creditor against usurious mortgage.*

| 42 | 631 |
|-----|------|
| e114 | 1232 |

1. In a suit to foreclose a mortgage which the mortgagor does not defend, a junior judgment creditor of the mortgagor cannot make the defense for himself that the mortgage is void for usury, under ch. 160, Laws of 1859.
2. Whether such creditor may reduce the security to the amount for which it ought to stand in equity, or cancel it on payment of such amount (*Draper v. Emerson*, 22 Wis., 147; *Lee v. Peckham*, 17 id., 383), is not here decided.

APPEAL from the Circuit Court for *Wood* County.

Foreclosure of a mortgage, executed in 1870. The administrator of the mortgagor's estate, his widow and heirs-at-law, the surviving partner of a firm of which he had been a member, and certain judgment creditors of the estate, including *Homier*, were made defendants. None of them answered, except *Homier*. His answer averred that the mortgage was void for usury; that the estate of the mortgagor was insolvent, as was also said surviving partner; and that there was no

property of said estate or said partner (other than that covered by the mortgage) out of which any considerable part of defendant's judgment could be satisfied. On these grounds, he asked judgment that the complaint be dismissed, and for costs.

The court found that the mortgage was valid, and rendered judgment of foreclosure and sale against all the defendants. From this judgment, *Homier* appealed.

On the 26th of September, 1877, the cause was submitted on the briefs of *Henry Hayden* for the appellant, and that of *Geo. R. Gardner* for the respondent. On the 23d of October following, the court ordered an oral argument; and on the 7th of November, the cause was argued at the bar by *Henry Hayden* for the appellant, and by *Geo. R. Gardner* and *C. M. Webb* for the respondent.

For the appellant it was argued, 1. That the mortgage was in fact usurious. 2. That it was void as against creditors of the grantor (*Ingles v. Donalson*, 2 Hayw. (N. C.), 57; *Gaither v. Mumford*, 1 N. C. T. R., 167); that the law against usury is aimed at the contract rather than at the parties (*Botsford v. Sanford*, 2 Conn., 276; *Townsend v. Bush*, 1 id., 269; *Wales v. Webb*, 5 id., 156); and that, the contract being declared void by the statute, the court would not lend its aid to enforce it against any of the defendants, and plaintiff was incapacitated from maintaining any action upon it. *Dill v. Ellicott*, Taney's C. C. R., 233; *Williams v. Fitzhugh*, 37 N. Y., 444, 446; *Bissell v. Railroad Cos.*, 22 id., 273; *Jackson v. Packard*, 6 Wend., 415; *Rice v. Welling*, 5 id., 595; *Hammond v. Hopping*, 13 id., 505; *Austin v. Burgess*, 36 Wis., 186; *Swift v. Agnes*, 33 id., 228; Tyler on Usury, 381–2. 3. That as the question of appellant's right to defend on the ground of usury had not been presented to or passed upon by the court below, it could not be raised here. *Bogert v. Phelps*, 14 Wis., 88; *Tomlinson v. Wallace*, 16 id., 224, and V. & B.'s note to new edition.

For the respondent it was argued, among other things, that

the appellant could not avail himself of the defense of usury,
1. Because the statute against usury is for the sole benefit of
the borrower, and those in privity with him (Tyler on Usury,
417, and cases there cited), and a mere judgment creditor of
the borrower is not in privity with him. Tyler on Usury,
414, and cases there cited; *Post v. Bank of Utica*, 7 Hill,
391; *Rexford v. Widger*, 2 N. Y., 131; *Schermerhorn v. Talman*, 14 id., 127; *Chamberlain v. Dempsey*, 36 id., 149; *Draper v. Emerson*, 22 Wis., 147, and cases cited in the last two.
2. Because it appeared from the evidence that there was ample property, outside of that covered by the mortgage, to satisfy appellant's judgment; and to allow him to avail himself
of the defense of usury, in this case, would be in effect to hold
that such a defense may be made by a person who is not only
not a party or privy to the contract, but is in no way affected
by it.

RYAN, C. J. This appeal presents the question, whether a
junior judgment creditor of the mortgagor can, in a suit to
foreclose the mortgage which the mortgagor does not defend,
make the defense for himself that the mortgage is usurious
and void under ch. 160 of 1859. In other words, whether the
right to avoid a security for usury under that statute is personal to the borrower, or whether a creditor can avail himself
of it, when the borrower does not.

The question here is one strictly of avoidance. The right
of a creditor of the borrower to reduce the security to the
amount for which it ought to stand in equity, or to cancel the
security on payment of such amount (*Draper v. Emerson*, 22
Wis., 147; *Lee v. Peckham*, 17 id., 383), is not in the present
case. The two questions are different, though closely akin.
What we hold on the one may bear upon the other. But we desire to say in advance that we have not considered the latter
question, and intend to indicate no opinion upon it in this case.

Usury is *malum prohibitum*, not *malum in se*. It rests

wholly in statute. A borrower and a lender cannot properly be said to deal together on equal terms. The necessity of the one and the power of the other to relieve it, give an advantage to the lender over the borrower. This may be so abused as to become an undue advantage. And experience has shown that the wants of borrowers and the greed of lenders are the frequent occasion of grievous oppression. Hence arose statutes against usury. And whatever be their form, their general policy is to protect the borrower against oppressive exaction of the lender.

And, as between borrower and lender, the defense of usury may well involve bad faith. This is especially true when the defense involves repudiation of principal as well as usurious interest. When statutes give such a defense, however, courts must uphold it, however hard it may be. *Austin v. Burgess*, 36 Wis., 187.

But while courts, under a statute avoiding the entire contract for usury, will uphold the defense according to the letter of the statute, they will grant affirmative relief, not expressly given by such a statute, only upon payment of the money actually loaned and legal interest. *Lee v. Peckham*, *Draper v. Emerson*, *supra*. And this is because, while it is the duty of courts to give effect to the letter of a statute against oppression of the borrower, they will not extend the letter of the statute to relief oppressive of the lender.

And, because statutes of usury are designed to protect the borrower from oppression, the borrower always has the option of paying his usurious debt. When he has paid it, he has no right to recover back any part of it at law, unless the statute expressly gives such an action. As the supreme court of Connecticut says in effect, the borrower is the best judge of the oppression of the contract against which the statute affords him the right of relief; and if he sees fit, in justice and honor, to waive his right of avoiding the contract, he certainly may do so. *Reading v. Weston*, 7 Conn., 409. Such stat-

utes neither prohibit the borrower from paying, nor the lender from receiving, the usurious debt. *Dill v. Ellicott*, Taney's C. C., 233.

It is difficult to perceive why the defense given by the statute to the borrower, for his protection against oppression, and which he may waive at his pleasure, should be extended to any one but himself or his representatives. In the language of the Connecticut court, in the case already quoted: "On what good reason may a stranger to a usurious agreement be suffered to do what the party in interest may consider as incompatible with honor and integrity?"

This question has given rise to a very wide range of discussion. The cases have generally held the defense of usury personal to the debtor, his privies in blood or estate, and privies to the contract; and that strangers to a contract cannot impeach it for usury. There is, however, some confusion in the cases upon the question, whether creditors having a lien on land affected by a usurious mortgage, are to be considered so far privies in estate, as to entitle them to take advantage of the usury.

The authorities are collected and reviewed with much learning in ch. 21 of Tyler on Usury. They are so numerous that it would be both burdensome and unprofitable to review them here. The question is an open one in this state; and there certainly are cases elsewhere to support a ruling either way. We have come to the conclusion, however, after full consideration of the cases, that principle and the weight of authority are against the right of a mere creditor. We do not know that we can better express our view than by quoting the language used by Mr. Tyler in the work cited:

"From the authorities, it seems to be decided that the policy of the statute of usury is the protection of borrowers against oppressive exactions by lenders. It is not essential to the promotion of this policy that other persons than the victims of the usurer, or persons standing in legal privity

with him, should have the benefit of the statute, and hence the rule that the objection of usury cannot be raised by a mere stranger to the usurious transaction. And it has been expressly declared that if the borrower prefers, for any reason, to abide by his agreement, he will be permitted to do so. He will not be compelled to accept the aid of the statute of usury against the convictions of his judgment and conscience; and whenever he has waived the benefit which the statute proffers, no one else can make it available in his place." This would exclude mere creditors, as has been expressly held in several cases cited by the author.

A junior judgment creditor is not a necessary party to the foreclosure of a mortgage. He is usually made a party for the purpose only of foreclosing his right to redeem. And the only effect of his not being a party, is, that his right to redeem survives the judgment of foreclosure. If a junior creditor be made a party, and undertakes to set up the defense of usury in the mortgage, his interest is limited by his judgment. The mortgagee may certainly extinguish his defense, if he have it, by satisfying the judgment; or may exclude it from the foreclosure, by discontinuing as against the creditor. Upon such discontinuance the creditor's right to redeem, and any right he may have to proceed against the mortgage for usury, remain; but his defense of usury avails nothing against the foreclosure.

He can then impeach the mortgage for usury, only by direct proceeding taken on his own behalf, as by counterclaim in the foreclosure suit. In either direct subsequent proceeding or counterclaim in the foreclosure, he cannot avoid the mortgage. At the best, he can only set aside the mortgage as a prior lien, by payment of the principal debt and legal interest. *Draper v. Emerson, supra.* Whether he can do even this, is not decided in that case or in this.

Thus it is seen that the defense of usury, made by a judgment creditor against the mortgage, is largely, if not wholly,

in the nature of affirmative relief. And it may be doubted whether, if a creditor can avail himself of usury in the mortgage at all, he must not under the code do so by counterclaim. Because he is a stranger to the mortgage, and because any right of defense against it is limited by his judgment, his defense of usury, if admissible and sustained, cannot prevail to prevent foreclosure, as between mortgagor and mortgagee; but only to entitle him to dismissal of the complaint, as against himself. This is expressly held in a case cited for the appellant. *Post v. Dart*, 8 Paige, 639. We will not consider here the effect of such a dismissal under the code. If not equivalent to judgment avoiding the mortgage as against the creditor, it merely saves his right to redeem, and whatever right he may have to proceed against the mortgage. If equivalent to judgment avoiding the mortgage, as against the creditor, it involves this singular anomaly: that the court, notwithstanding the usury, gives effect to the mortgage against the party for whose protection the statute was passed, and avoids it as against a stranger to the borrowing and lending, and to the oppression of the borrower by the lender. This is outside of the policy of the statute; tending to make it, on behalf of a stranger, an engine of oppression against both borrower and lender.

Such a right once conceded to a mere creditor, might involve incalculable confusion and open the door to incalculable litigation. If a junior creditor could thus impeach a prior mortgage for usury, it is difficult to see why he could not so impeach a prior foreclosure or personal judgment, and why he should not expose his own judgment to like impeachment in turn, on behalf of a judgment junior to it; and so on continuously, with no repose for titles held by judgment creditors under their judgments, until the statute of limitations should purge them of usury. We cannot think this the policy of the statute.

Doubtless the legislature might pass a statute of some such

sweeping and indiscriminate effect. The question here is, whether chapter 160 of 1859 can bear such a construction. And we do not think so.

The language of sec. 8 is very sweeping. A merely literal construction would appear to impose a duty upon the courts, with or without pleading, with or without motion of any party, not only to declare usurious securities void in all cases, but to enjoin their prosecution and order their surrender. But the section must receive a reasonable, judicial construction, in connection with the other provisions of the statute.

Section 3 gives a right of action for treble the amount of usury paid, but expressly confines it to the borrower. Section 5 gives a suit to discover usury, but confines it to the borrower (*Draper v. Emerson, supra*), section 6 expressly doing so. The language of section 7 is general enough literally to cover any party; but the express provision that either party may be a witness to the usury, clearly implies its relation to actions between borrowers and lenders only. Section 4 is as broad in its way as section 8; but neither of these sections gives specific remedy or relief. Both are general, with necessary relation to the specific provisions of other sections. And the entire statute, considered together, clearly has regard to the principles adjudicated upon statutes of usury generally, before it was passed, regard to the oppression of the borrower only, and confines its remedies to him, including, of course, his privies by contract, blood and estate. It contains no express provision in favor of the creditor of the borrower. And general words which might include any stranger, with or without interest, are all restrained by its general scope, and by the particular provisions in favor of the borrower. Any right which a creditor may have to assail the borrower's contract for usury, must be found outside of the statute. The statute itself gives him none.

In any view, we must hold that the court below was right in overruling the appellant's defense. We indicate no opinion

on the question, whether the mortgage here could be held usurious as against the mortgagor.

*By the Court.* — The judgment of the court below is affirmed.